Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1346 | **DATE** | 12/13/2000 |
| **CASE TITLE** | USA ex rel. Edward R. Faircloth vs. Jerry L. Sternes | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Faircloth's petition for a writ of habeas corpus is denied. Judgment is entered in favor of respondent Jerry L. Sternes and against petitioner Edward R. Faircloth. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 14 2000 date docketed | |
| ✓ | Docketing to mail notices. | | | 30 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RO | courtroom deputy's initials | 00 DEC 13 PM 4:45 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ) <br> EDWARD R. FAIRCLOTH, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> JERRY L. STERNES, ) <br> ) <br> Respondent. ) | No. 00 C 1346 <br><br> Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Edward R. Faircloth petitions this Court for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Following a jury trial, Faircloth was convicted of delivery of a controlled substance, possession with intent to deliver a controlled substance, and drug-induced homicide. Faircloth was sentenced to consecutive sentences of 15 years for delivery of a controlled substance, 15 years for possession with intent to deliver a controlled substance, and 30 years for drug-induced homicide. Faircloth unsuccessfully pursued state appellate remedies and raised several issues in his habeas petition filed on March 3, 2000: (1) violation of the Double Jeopardy Clause; (2) unconstitutionality of the drug-induced homicide statute[1]; and (3) trial court error in failing to tender jury instructions on involuntary manslaughter as a lesser included offense of drug-induced homicide. On July 5, the State filed a motion to dismiss, arguing that Faircloth's habeas petition was time barred. On July 24, Faircloth filed a motion for leave to allow him to

---

[1] In his habeas petition, Faircloth asserts "the overbreadth and vagueness of the delivery component in the statute deprives defendants of a jury instruction on involuntary manslaughter." (R. 17, Faircloth's Habeas Pet. at 14.) A liberal reading of this statement suggests that Faircloth is arguing that the drug-induced homicide statute is unconstitutional.

30

bring his claim of ineffective assistance of counsel, which we granted. For the reasons stated below, we deny Faircloth's habeas petition.

## RELEVANT FACTS[2]

When considering a habeas corpus petition, the Court presumes that the factual determinations of the state court are correct. 28 U.S.C. § 2254(e)(1). Accordingly, we adopt the facts as set forth by the Illinois Appellate Court. *People v. Faircloth*, 599 N.E.2d 1356 (Ill. App. Ct. 1992).

The State's principal witness at trial, Marie Gilbert, testified that on September 11, 1989, she went to Pete Millette's house to obtain cocaine. While she was there, Faircloth arrived, wanting to purchase cocaine. Gilbert was hiding in the bathroom at the time but recognized Faircloth's voice. Later, Millette told Gilbert that he had sold half a gram of cocaine to Faircloth.

---

[2] We take the following facts from the state appellate court's opinion on direct appeal, *see* § 2254(e)(1) (facts as found by the state court are presumed correct); *People v. Faircloth*, 599 N.E.2d 1356 (Ill. App. Ct. 1992), and relate only those facts relevant to Faircloth's petition.

Although Petitioner requests an evidentiary hearing, he fails to convince us of the need for such a hearing. A federal evidentiary hearing is required "if a habeas petitioner alleges facts which, if proved, would entitle him to relief and the state courts -- for reasons beyond the control of the petitioner -- never considered the claim in a full and fair hearing." *Spreitzer v. Schomig*, 219 F.3d 639, 648 (7th Cir. 2000) (citations omitted). If the petitioner, himself, failed to adequately develop material facts in previous state court proceedings, he "must show both good cause for failing to submit the required affidavits in state court and that he has suffered actual prejudice" in order to convince the court that an evidentiary hearing is warranted. *Id.* at 648 (citations omitted).

In this case, Faircloth does not allege either that the record is insufficient to dispose of his claims without an evidentiary hearing or that the state court hearing did not constitute a full and fair hearing. Moreover, even if the record were deficient, Faircloth does not provide evidence to refute the State's assertion that any deficiency in the record is his sole responsibility. Because Faircloth has not provided any evidence of cause or prejudice to excuse his failure to adequately develop the facts, we decline his request for an evidentiary hearing.

Later that day, Gilbert joined Faircloth and Sandra Parise at a house located at 625 Glen Street, which belonged to Faircloth's sister and her husband, Robin and Tom Oxendine. Gilbert, Faircloth, and Parise used up all of the cocaine by Sunday evening and decided to obtain more from Millette. Gilbert believed Faircloth was going to steal the cocaine. Gilbert and Parise waited down the block while Faircloth went to Millette's house. When they heard the sound of glass breaking, they walked toward Millette's house, and Faircloth soon appeared from the direction of Millette's backyard with a rock of cocaine in his pants. Gilbert believed the rock weighed approximately two ounces. After the three of them returned to the Oxendine house, Faircloth injected himself and the two girls with approximately six to seven injections of cocaine each. The next day, September 12, Parise and Gilbert went to Gilbert's house to prepare some of the cocaine to be sold. While doing so, they each snorted some of it.

On September 13, Faircloth, Parise, and Gilbert met at the Oxendines' trailer on the lake. After receiving two injections from Faircloth, Parise began to snort cocaine. When Faircloth's brother-in-law, Tom Oxendine, ordered them to leave the trailer, they went back to the house on Glen Street. The three of them took a brief detour, stopping at a baseball field to take more cocaine. When they eventually arrived back at the Glen Street house at approximately 10:00 p.m., they again took cocaine. Gilbert then decided she did not want any more cocaine and went to sleep. Robin Oxendine woke Gilbert up at approximately 5:00 a.m. to tell her that Parise was having a seizure. Gilbert found Faircloth holding Parise's convulsing body. Faircloth told Gilbert not to tell Robin Oxendine what was wrong with Parise.

Valerie Bubica, a paramedic with the Romeoville fire department, responded to a call from the Glen Street house that day. According to the caller, there was a young person suffering

3

convulsions, having difficulty breathing, and bleeding from the mouth. Bubica arrived on the scene and found Faircloth sitting on the floor, supporting Parise's limp body. Bubica concluded that Parise was in cardiac arrest and called for assistance. Noticing what appeared to be fresh needle marks on Parise's arms, she also called the police. Parise was transported to the hospital and died soon after from the adverse effects of cocaine. At the time of Parise's death, Gilbert told the police that the cocaine belonged to Faircloth.

While Faircloth was in prison awaiting trial he engaged in a mutual correspondence via mail and telephone with Gilbert. In their letters and phone conversations, they discussed the possibility of Gilbert changing her statement to the police. Faircloth wanted Gilbert to tell the police that the cocaine in fact belonged to Parise. Faircloth even went so far as to draft a letter he wanted Gilbert to send to the judge. The letter stated that her original statement to the police was a lie, that the cocaine in fact belonged to Parise, and that Faircloth was not to blame for Parise's death. Gilbert agreed in her letters to go along with the story that the cocaine belonged to Parise and told this changed story to an investigator from the public defender's office. At trial, however, Gilbert went back to her original story, stating that she did not want to go to prison for lying.

At the close of the evidence, the jury convicted Faircloth of delivery of a controlled substance, possession with intent to deliver a controlled substance, and drug-induced homicide. Faircloth was sentenced to consecutive sentences of 15 years for delivery of a controlled substance, 15 years for possession with intent to deliver a controlled substance, and 30 years for drug-induced homicide. Faircloth appealed to the Illinois Appellate Court, claiming that: (1) the trial court erred by refusing to submit a jury instruction regarding the offense of involuntary

manslaughter; (2) the trial court improperly admitted into evidence certain letters allegedly written by Faircloth without laying a proper foundation; and (3) he was denied effective assistance of counsel because his "defense counsel erred in failing to request a jury instruction that Marie Gilbert's prior inconsistent statements could be used as substantive evidence. According to [Faircloth], this error was compounded when counsel himself instructed the jury that Gilbert's statements could only be used for impeachment purposes." *Faircloth*, 599 N.E.2d at 1361. The Illinois Appellate Court affirmed Faircloth's conviction on September 10, 1992. Faircloth did not file a petition for leave to appeal to the Illinois Supreme Court.

On March 14, 1994, Faircloth filed a petition for post-conviction relief in the circuit court of Illinois, alleging that the court had denied his Fourteenth Amendment right to due process for "lack of jury instructions." (R. 15, Exs. to State's Mot. to Dismiss, Ex. D, Faircloth's First Post-Conviction Pet. at 2.) The circuit court denied the petition on April 12, 1994, and Faircloth did not appeal the denial.

On November 10, 1997, Faircloth filed a second post-conviction petition, this time arguing, *inter alia*, that the drug-induced homicide statute under which he was convicted was unconstitutional under the void-for-vagueness doctrine. On December 8, 1997, the circuit court also dismissed this second post-conviction petition, finding it without merit and untimely. Furthermore, the court found that Faircloth's claims "were or could have been previously raised in [Faircloth's] first Post-Conviction Petition." (*Id.* at Ex. G, Circuit Ct.'s Order of Dismissal of Second Post-Conviction Pet.) Faircloth appealed this dismissal, claiming that his petition was not untimely because he was being medicated with psychotropic drugs in the Menard Psychiatric Center. In addition, he argued that he had had ineffective assistance of counsel at trial because

his lawyers failed to contest the imposition of multiple convictions and consecutive sentences. On August 10, 1999, the Illinois Appellate Court affirmed the circuit court's denial of the second post-conviction petition on timeliness grounds because Faircloth did not allege that his petition was late due to his mental condition, instead Faircloth argued that he could not file a petition earlier because there was no paralegal available to help him while at Menard. The appellate court further reasoned that, even if Faircloth had properly alleged that his mental condition was responsible for the tardy petition, he failed to demonstrate that his mental condition had prevented him from timely filing. On September 14, 1999, Faircloth filed a petition for leave to appeal the affirmance of his post-conviction dismissal to the Illinois Supreme Court. His petition was denied on December 23, 1999.

Faircloth filed the habeas petition currently before this Court on March 3, 2000. Faircloth now advances three issues in his habeas petition: (1) violation of the Double Jeopardy Clause; (2) unconstitutionality of the drug-induced homicide statute; and (3) trial court error in failing to tender jury instructions on involuntary manslaughter as a lesser included offense of drug-induced homicide. In addition to these three arguments, we consider a fourth argument, Faircloth's claim of ineffective assistance of counsel for failure to object to the prosecutor improperly vouching for the credibility of a witness for the State, Marie Gilbert, and ineffective assistance of counsel for selective prosecution where the decision was made not to prosecute witness Gilbert, which we earlier permitted him to pursue.

## ANALYSIS

### I. Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective April

24, 1996, limits the period for habeas corpus actions to one year:

(5) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --

   (A) the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review;

   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).

The one-year statute of limitations provision became effective on April 24, 1996, but the Seventh Circuit has provided a one-year grace period in applying § 2244(d)(1). *Lindh v. Murphy*, 96 F.3d 856, 865-66 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997). Accordingly, if, as in this case, the state prisoner's conviction became final prior to the enactment of the AEDPA, he had until April 23, 1997 to file a petition for writ of habeas corpus.

Faircloth argues that his petition is not barred by the statute of limitations because he timely filed it within one year of the supreme court's dismissal of his petition for leave to appeal the affirmance of his second post-conviction dismissal. We disagree. Faircloth filed his second post-conviction petition with the circuit court on November 10, 1997, more than 3 ½ years after the denial of his first post-conviction petition, and past the April 23, 1997 deadline for filing a habeas petition. In order to come within the statute of limitations period, Faircloth should have

7

had something on file by April 23, 1997. Faircloth erroneously suggests that filing his second post-conviction petition tolled the statute of limitations.

The Illinois Supreme Court typically allows successive post-conviction petitions only when the original post-conviction proceeding was deficient in some fundamental way. *Starks v. Welborn*, No. 99 C 1117, 1999 WL 674754, at *5 (N.D. Ill. Aug. 18, 1999) (citing *People v. Free*, 522 N.E.2d 1184, 1188 (Ill. 1988); *Neal v. Gramley*, 99 F.3d 841, 843 (7th Cir. 1996) (discussing Illinois law on successive post-conviction petitions)). Because Faircloth has failed to show that there was such a deficiency, his second post-conviction petition is not permissible. Thus, because Faircloth failed to file his habeas petition by April 23, 1997, and his second post-conviction petition did not toll the statute of limitations, his habeas petition is time-barred.

## II. Procedural Issues

Even if we were to consider Faircloth's late-filed habeas petition, we would still decline to review it on the merits because all of Faircloth's habeas claims have been procedurally defaulted.[3]

### A. Procedural Default

A habeas claim is procedurally defaulted if the petitioner either: (1) has failed to present a federal constitutional issue fairly to the state court system before raising it in the federal habeas proceedings, *Spreitzer*, 219 F.3d at 644-45; or (2) has presented an issue to the state court, only

---

[3] We note that the procedural requirement of exhaustion has been met. Federal habeas corpus relief is available to state prisoners only after they have exhausted their claims in state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). Here, the record makes clear, and the state concedes, that Faircloth has exhausted all remedies available to him in the Illinois state court system. (R. 14, State's Mot. to Dismiss ¶ 12.)

to have it rejected on an independent and adequate state law ground, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). If a claim is thus barred on procedural default grounds, it is not cognizable in a federal habeas proceeding unless the petitioner either can demonstrate "cause and prejudice" or show that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *Cawley v. DeTella*, 71 F.3d 691, 695 (7th Cir. 1995).

**1. Fair Presentment**

In this case, Faircloth never presented his claims of ineffective assistance of counsel for failure to object to the prosecutor improperly vouching for the credibility of a witness for the State, Marie Gilbert, and ineffective assistance of counsel for selective prosecution where the decision was made not to prosecute witness Gilbert. These claims were not raised at any time in the state court proceedings, either on direct or post-conviction review, and the time for doing so has expired. *See* 725 ILCS 5/122-1(c) (West 2000). Thus, these claims are procedurally defaulted.

In addition, Faircloth failed to raise his unconstitutionality of the drug-induced homicide statute argument on direct appeal or in his first post-conviction petition. He raised the argument for the first time in his second post-conviction petition, but, after the circuit court dismissed the petition, he failed to pursue the claim in subsequent appeals. Case law makes clear that to avoid procedural default, petitioners must pursue their federal claims to the highest level of state review. *Boerckel*, 526 U.S. at 845. In other words, state prisoners must invoke one complete round of the state's appellate review process. *Id.* Thus, because Faircloth did not pursue his unconstitutionality of the statute claim on appeal, that claim also is procedurally defaulted.

Furthermore, Faircloth argued, on direct appeal, that the court wrongly failed to give jury

instructions on involuntary manslaughter. However, he never filed a petition for leave to appeal the appellate court's decision to affirm his conviction to the supreme court. He later raised the same argument in his first post-conviction petition, but again failed to appeal the dismissal of his petition to the supreme court. He did not include this argument in his second post-conviction petition. Consequently, this claim also is procedurally defaulted.

## 2. Independent and Adequate State Grounds

Federal habeas corpus courts may not review a state court's denial of a state prisoner's federal constitutional claim if the decision of that court rests on an independent and adequate state ground. *Coleman*, 501 U.S. at 729. The doctrine of independent and adequate state ground "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* at 729-30.

Application of this rule further prohibits our review of Faircloth's habeas claims. "Under Illinois law, issues that could have been, i.e., issues apparent from the record, but were not raised on appeal are waived, unless 'fundamental fairness' requires otherwise or review by direct appeal was denied through failure of appellate counsel." *Carroll v. DeTella*, 983 F. Supp. 1135, 1142 (N.D. Ill. 1997) (quoting *People v. Piper*, 651 N.E.2d 739, 741 (Ill. 1995)); *see also People v. Griffin*, 687 N.E.2d 820, 827 (Ill. 1997) ("Issues that could have been presented on direct appeal, but were not, are deemed waived."). Such issues are procedurally defaulted for the purposes of habeas corpus review. Moreover, because the Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*, contemplates the filing of only one post-conviction petition, "any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." *People v. Flores*, 606 N.E.2d 1078, 1083 (Ill. 1992) (citation omitted). Thus, only claims that

could not have been raised in the original post-conviction petition are preserved for subsequent post-conviction petitions. *Id.* at 1086. In this case, all of Faircloth's habeas claims could have been raised on direct appeal, yet none, except the issue of jury instruction on involuntary manslaughter,[4] was included on direct appeal or in Faircloth's subsequently filed first post-conviction petition.

Furthermore, Faircloth's double jeopardy and unconstitutionality of the drug-induced homicide statute claims, raised for the first time in his second post-conviction petition, are also procedurally defaulted on the independent and adequate state ground of untimely filing. Faircloth, citing *People v. Johnson*, 727 N.E.2d 1058 (Ill. App. Ct. 2000) and *People v. McCain*, 727 N.E.2d 383 (Ill. App. Ct. 2000), argues that "the statute of limitation on post-convictions is an affirmative defense, and if not raised in the Circuit Court is waived." (R. 19, Faircloth's Answer to Ct.'s Order Explaining Why His Habeas Pet. is Timely at 7.) *Johnson*, however, is inapposite. First, in *Johnson*, the prisoner claimed that newly discovered evidence could establish his actual innocence; no such argument has been raised in this case. Furthermore, the post-conviction petition in *Johnson* was the first one the prisoner filed. By contrast, in this case, Faircloth is relying on a second post-conviction petition, which he has not shown should even be given consideration. In addition, in *McCain*, the appellate court, in determining that the trial court should not have dismissed the petition on timeliness grounds, repeatedly stressed that the circuit court "did not find that the defendant's petition was frivolous and patently without merit." *McCain*, 727 N.E.2d at 385. In this case, the circuit court made clear in its Order of Dismissal

---

[4] We earlier found that Faircloth failed to fairly present this claim to the state courts.

11

"[t]hat the allegations in this Petition are patently without merit and fail to raise a sufficient constitutional question upon which relief can be granted." (R. 15, Exs. to State's Mot. to Dismiss, Ex. G, Circuit Ct.'s Order of Dismissal of Second Post-Conviction Pet.)

Faircloth also argues that he was not culpable for the late filing; instead he pins the blame on his appointed counsel. However, "[f]reedom from culpable negligence is very difficult to establish. Erroneous advice from appellate counsel . . . [has] been held not to excuse late filings." *People v. Burris*, 734 N.E.2d 161, 163-64 (Ill. App. Ct. 2000) (citations omitted). In fact, as the appellate court pointed out, not even lack of legal assistance constitutes a sufficient reason to demonstrate lack of culpable negligence. (*See* R. 15, Exs. to State's Mot. to Dismiss, Ex. J, Ill. App. Ct. Summ. Order at 3.) Thus, because the Illinois state courts found that Faircloth's second post-conviction petition was not filed in a timely manner and his late filing was not excused, his claims, raised for the first time in that petition, were dismissed on an adequate and independent state ground.

## B. Cause and Prejudice

A petitioner can escape a procedural default by showing either cause and prejudice or fundamental miscarriage of justice. Faircloth offers ineffective assistance of counsel as cause for procedurally defaulting his claims. Ineffective assistance of counsel, if proven, can constitute "cause" for the purpose of procedural default. *Barnhill v. Flannigan*, 42 F.3d 1074, 1078 (7th Cir. 1994). However, before a petitioner can use ineffective assistance of counsel as cause for procedural default, "he must first present this claim as an independent claim to the state courts either on direct appeal or in post-conviction proceedings." *Lemons v. O'Sullivan*, 54 F.3d 357, 360 (7th Cir. 1995) (emphasis added). If the ineffective assistance of counsel claim is itself

12

procedurally defaulted, it cannot serve as cause to excuse procedural default of other claims. *Momient-El v. DeTella*, 118 F.3d 535, 542 (7th Cir. 1997); *Lemons*, 54 F.3d at 360-61. Here, all claims of ineffective assistance of counsel needed to excuse default have themselves been procedurally defaulted. Furthermore, Faircloth has not attempted "to show actual innocence, as opposed to legal innocence, as required to support the finding of a fundamental miscarriage of justice." *Spreitzer*, 219 F.3d at 648. Therefore, we find no reason to excuse the procedural default of Faircloth's claims.[5]

## CONCLUSION

For the reasons set forth above, we deny Faircloth's petition for a writ of habeas corpus. The Clerk of the Court is instructed to enter final judgment, pursuant to Federal Rule of Civil Procedure 58, against Faircloth.

ENTERED:

Judge Rubén Castillo
**United States District Court**

Dated: December 13, 2000

---

[5] We note that our review of the substantive merits of Faircloth's habeas petition makes clear that he would not have met the standards under AEDPA. We did not, however, consider the possible outcome on the merits in our decision to dismiss Faircloth's petition.

13